UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60062-CV-COHN/MAYNARD
(CASE NO. 18-60130-CR-COHN)

EMMANUEL RODOLE FRANCOIS,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT RECOMMENDING DENIAL OF
## MOTION TO VACATE SENTENCE UNDER § 2255

**THIS CAUSE** is before the Court upon Movant Emmanuel Rodole Francois' *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 1] ("Motion"), which has been referred to the undersigned for appropriate disposition [DE 14].   Movant pled guilty to possession of a firearm by a convicted felon, and the Court sentenced him to a term of 57 months in prison.   In his Motion, Movant challenges his conviction and sentence based on alleged ineffectiveness of trial counsel and under *Rehaif v. U.S.*, 139 S. Ct. 2191 (2019).   Respondent has responded in opposition [DE 7, DE 13].

After determining that the briefing raised issues requiring an evidentiary hearing, the Court appointed counsel for Movant and thereafter held an evidentiary hearing.   Upon careful review of the briefing, the testimony and evidence introduced at the evidentiary hearing, the credibility of the witnesses, argument of counsel, and all pertinent portions of the underlying criminal file and related civil file, the undersigned recommends that the Motion be **DENIED** for the following reasons.

## BACKGROUND

On May 22, 2018, a federal grand jury charged Movant with one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922 (g)(1) (Count 1). [CR DE 1].[1]  On May 23, 2018, Movant had his initial appearance [CR DE 7].  On May 27, 2018, Jennito Simon, Esq., filed a Notice of Appearance as Movant's retained counsel [CR DE 9].

On August 8, 2018, Movant pled guilty to the one-count indictment pursuant to a written plea agreement and factual proffer [CR DEs 24, 25].  Prior to sentencing, Movant objected to the Presentence Investigation Report and filed a Motion for Downward Departure [CR DEs 28, 30].  At Movant's sentencing on October 18, 2018, the Court sustained one of Movant's objections and found that "[t]he four-level enhancement will be reduced to a two-level enhancement," denied Movant's Motion for Downward Departure, and sentenced Movant to a total of 57 months in prison, to be followed by three years of supervised release. [CR DE 31, CR DE 42 at 14:24-15:1].  On the same day, Judgment was entered against Movant [CR DE 33].  Movant did not file a direct appeal.

On January 10, 2020, the instant *pro se* § 2255 Motion was filed [DE 1].  In the Motion, Movant asserted that (1) his trial counsel provided ineffective assistance by failing to timely file a direct appeal after Movant asked him to do so; and (2) his conviction should be vacated under *Rehaif v. U.S.*, 139 S. Ct. 2191 (June 21, 2019) [DE 1].  On February 27, 2020, Respondent responded in opposition and argued that Movant's first claim should be summarily denied as being untimely and that Movant's second claim fails on the merits [DE 7].

On September 8, 2020, Movant filed a "Traverse" [DE 8] indicating that he gave his Motion to prison officials for legal mailing on October 4, 2019.  In support, Movant provided a document entitled "Notice to the Clerk of Court," date stamped October 4, 2019, as well as an Affidavit from

---

[1] Citations to the underlying criminal case, 18-60130-Cr-Cohn will be "[CR DE__]," while citations to the instant § 2255 civil proceeding will be "[DE__]."

Robert Curtis Covington, another prisoner who says he witnessed Movant give some sort of unspecified legal documentation to the prison mail room officer [*Id.* at 11-12]. Mr. Covington's affidavit was signed and dated on August 26, 2020. [*Id.* at 12]. Movant's traverse also attached virtually identically-worded affidavits by Webertha Labossiere and Sonia Francois, both signed and dated August 27, 2020, indicating that both heard Movant "directly instruct his attorney Mr. Jennito Simon to file an appeal on [Movant's] behalf" and "[w]hile in court, Mr. Simon, agreed to file an appeal and he has told me that he actually did file an appeal on [Movant's] behalf" [*Id.* at 13-14].

On October 22, 2020, in response to a Court Order [DE 9], Respondent filed a supplemental response arguing that Movant's alleged new evidence of having given his Motion to prison officials on October 4, 2019 "is wholly untrustworthy and incredible" and that the "only reliable evidence" establishes that Movant gave his Motion to prison officials for mailing on December 31, 2019 [DE 13 at 3, 7]. In support, Respondent submitted a copy of the official "special/legal mail" stamp utilized by the Bureau of Prisons on envelopes provided by inmates containing legal mail [DE 13-1] and the "Inmate History Quarters" showing where Movant and fellow inmate Covington were housed in October 2019 [DE 13-2].[2]

On April 30, 2021, the Court issued an Order finding an evidentiary hearing required and appointing counsel for Movant [DE 15]. On September 29, 2021, the Court held an evidentiary hearing to address whether Movant timely filed his Motion and whether Movant's counsel failed to file a direct appeal after being instructed to do so. Appointed counsel represented Movant at the hearing, at which time the Court heard the sworn testimony of Movant, Sonia Francois (Movant's older sister), Robert Covington (Movant's fellow inmate), Webertha Labossiere (Movant's son's

---

[2] Respondent submitted this "Inmate History Quarters" information in support of its argument that "movant and inmate Covington were not housed in the same unit in October, 2019, when movant allegedly gave his §2255 legal mail to BOP, and were not housed together until movant was recently transferred to 'House O' beginning on July 16, 2020." [DE 13 at 6].

mother and ex-girlfriend), and Jennito Simon (Movant's retained trial counsel).  In addition, with no objection by Respondent, Movant introduced seven documentary exhibits into evidence [DE 34].

## STANDARD OF REVIEW

Because collateral review is not a substitute for appeal, the grounds for collateral attack on a final judgment under 28 U.S.C. § 2255 are extremely limited.  Under § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  A district court is authorized to grant § 2255 relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C § 2255(a).  If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255(b).

Relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *See Lynn v. U.S.*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also U.S. v. Frady*, 456 U.S. 152, 165 (1982).  A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. U.S.*, 777 F.3d 1306, 1316 (11th Cir. 2015); *see also Beeman v. U.S.*, 871 F.3d 1215, 1221–23 (11th Cir. 2017).  If "'the evidence does not clearly explain what happened … the party with the burden loses.'" *Beeman*, 871 F.3d at 1225 (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)).  A § 2255 movant will not be entitled to relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

4

## DISCUSSION

Movant asserts two claims for relief. First, Movant alleges his trial counsel provided ineffective assistance by not filing a direct appeal after Movant instructed him to do so. Second, Movant alleges error under *Rehaif v. U.S.*, 139 S. Ct. 2191 (2019). The Court will address each claim in turn.

### A.    *Claim One—Alleged Ineffective Assistance for Failure to File Direct Appeal*

#### 1.    **Movant's Ineffective Assistance Claim is Untimely**

As a threshold matter, the Court must address the contested issue of whether Movant timely raised his ineffective assistance claim. Ordinarily, a movant must file his § 2255 motion within one year of the final judgment. 28 U.S.C. § 2255(f)(1). Here, the Court entered Movant's final judgment of conviction on October 18, 2018. Movant did not file a direct appeal. Thus, for § 2255(f)(1) purposes, the judgment became final 14 days later—on November 1, 2018. *See Murphy v. U.S.*, 634 F.3d 1303, 1307 (11th Cir. 2011); *Ramirez v. U.S.*, 146 F. App'x 325, 326 (11th Cir. 2005) (per curiam) (citing Fed. R. App. P. 4(b)(1)(A)(i), (6)). The parties agree and the Court finds that Movant was thus required to file his § 2255 ineffective assistance claim within one year of this final date — by November 1, 2019.[3]

Movant's *pro se* § 2255 Motion was filed in this Court on January 10, 2020 [DE 1]. Prior to this filing date, the Court had no record of the Motion. The Motion is signed by Movant and includes his handwritten date of October 4, 2019 [DE 1 at 9], but the outside envelope addressed to the Clerk's Office bears a Butner prison stamp receipt date of December 13, 2019 and a Clerk's Office receipt date of January 10, 2020 [*Id.* at 11]. Movant alleges he timely gave his Motion to prison authorities

---

[3] The one-year period for filing a § 2255 motion is calculated using the "anniversary method, under which the limitations period expires on the anniversary of the date it began to run," *i.e.*, the same day of the same month in the following year. *See Downs v. McNeil,* 520 F.3d 1311, 1318 (11th Cir.2008) (quotation marks omitted).

on October 4, 2019.   Respondent disagrees and argues it was delivered to prison authorities on December 31, 2019, thus rendering it untimely.   Resolution of this timeliness issue—*i.e.* whether Movant timely gave his § 2255 Motion to prison authorities for mailing to the Court on or before November 1, 2019—turns on application of the prison mailbox rule and the Court's determination of credibility in light of the evidence presented.

The Supreme Court established a bright line rule for prisoner *pro se* filings in *Houston v. Lack*, 487 U.S. 266, 276 (1988).   *See Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).   "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."   *U.S. v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (quotations omitted). The mailbox rule may be applied even when a prisoner's pleading is "lost" and never received by the district court.   *See Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006).   The mailbox rule applies to *pro se* prisoner litigants because a prisoner necessarily loses control of his filing when he delivers it to prison authorities.   *Houston*, 487 U.S. at 275.   This rule is premised on the understanding that *pro se* prisoners "are unable to file personally in the clerk's office, they cannot utilize a private express carrier, and they cannot place a telephone call to ascertain whether a document mailed for filing arrived."   *Garvey*, 993 F.2d at 780.   Further, beyond lacking such "safeguards," *pro se* prisoners "do not have counsel to monitor the filing process."   *Id.*   Ultimately, the "prisoner has no recourse other than to entrust his court filings to prison authorities over whom he has no control."   *Id.*

Absent evidence to the contrary, it is assumed "that a prisoner delivered a filing to prison authorities on the date that he signed it."   *Jeffries v. U.S.*, 748 F.3d 1310, 1314 (11th Cir. 2014); *see also Washington v. U.S.*, 243 F.3d 1299, 1301 (11th Cir. 2001) (accepting the signature date on the pleading as the date of delivery to prison authorities where the government "offered no evidence to support a conclusion that the motion was delivered at a later date."). The Eleventh Circuit has

6

identified "prison logs or other records" as evidence that could contradict the signing date. *Washington*, 243 F.3d at 1301. "The burden is on the Government to prove the motion was delivered to prison authorities on a date other than the date the prisoner signed it." *Jeffries*, 748 F.3d at 1314.

In explaining why the Government bears the burden of proof, the Supreme Court has noted that prisons "have well-developed procedures for recording the date and time at which they receive papers for mailing and [ ] can readily dispute a prisoner's assertions that he delivered the paper on a different date." *Houston*, 487 U.S. at 275. The Court emphasized that reference to mail logs "will generally be a straightforward inquiry." *Id.* at 275.

Here, Movant asserts that he gave his Motion to prison authorities for mailing on October 4, 2019. In support, as part of a traverse filed almost a year later on September 8, 2020, Movant submitted a one-page document titled "Notice to the Clerk of the District Court." This Notice purports to enclose Movant's § 2255 Motion and claims to provide "notice in the record [of] direct proof as the date that I handed my § 2255-motion to prison officials." [DE 8 at 11]. The Notice contains a handwritten date of October 4, 2019 as well as a faint stamp with the handwritten notation "Oct. 4, 19" and a reference to "Butner" Federal Correctional Institution which is where Movant has been incarcerated [*Id.*]. Movant also filed an Affidavit by Robert Curtis Covington, a fellow inmate who claims to have been with Movant on "Friday, October 4, 2019" and says he witnessed Movant "give his legal documentation to the mail room officer" [*Id.* at 12]. Mr. Covington's affidavit is signed August 26, 2020 [*Id.*].

At the evidentiary hearing, Movant testified as follows. When asked what date he submitted his Motion, Movant first responded: "It's on the paper; ain't it?" Once his counsel refreshed his recollection, Movant testified that he submitted the Motion on October 4, 2019. When asked how he mailed his Motion, Movant testified that he was "not really sure what exact date it was" but that he

went to the prison mailroom to drop it off after grabbing his lunch for the day.  Movant affirmed that the date was October 4, 2019 and indicated that fellow inmate Robert Covington was with him in the mailroom when he dropped off the Motion.  Movant did not remember who he gave the Motion to but said he was sure about the October 4, 2019 date because "I got witnesses" and "Legal work, that's something you got to remember."  When asked about the stamp located on the Notice to the Clerk of Court [DE 8 at 11] that he submitted as part of his later traverse, Movant said he did not know how the stamp got on the document but that he did not put it there.

Robert Covington also testified at the evidentiary hearing.  Mr. Covington testified that he is incarcerated with Movant at the Butner federal prison located in North Carolina.  According to Mr. Covington, he and Movant went to the mail room during the noon meal on October 4, 2019 to deliver mail to prison mail room officer Mrs. Champion who took, stamped, signed, dated, and sealed the mail from Movant.  When asked what was in Movant's mail, Mr. Covington responded "most definitely it was a 2255, habeas corpus" which he knew because Movant showed it to him prior to handing it over for delivery.  Mr. Covington said he remembered the date because he was wearing a watch that reflects the date and time and also because he sent legal mail of his own via certified mail that same day.  Mr. Covington acknowledged that his later affidavit was dated August 26, 2020.

Respondent ardently refutes Movant's claim and asserts that the reliable evidence of record shows that Movant delivered his §2255 Motion to prison authorities for the first time on December 31, 2019, and that no credible evidence supports his claim of having done so on October 4, 2019.  In support, Respondent first points to Bureau of Prisons ("BOP") general policies and procedures for outgoing prisoner legal mail.  Respondent asserts that under BOP policy, "inmate correspondence is ordinarily processed and delivered within 24 hours, but special and legal mail are afforded priority."  BOP Program Statement 5800.16, dated April 5, 2011, §3.9, pg. 21, "In/Out Processing Requirements

for Special and Legal Mail," available at https://www.bop.gov/policy/progstat/5800_016.pdf.
Further, inmates are responsible for delivering "their own outgoing special or legal mail directly to a
staff member;" and upon receipt, the staff member "will immediately confirm the inmate delivering
it is the same inmate reflected in the return address" after which "the mail will be hand carried to the
mail room." *Id.* §3.9, pgs. 21-22.

Thus, under BOP policy, once delivered to a staff member, outgoing mail is processed and
delivered to the mail room within 24 hours.  Respondent emphasizes that the outside of the envelope
used by Movant to mail his Motion reflects that it was stamped by prison authorities at Butner FCI
on December 31, 2019 and was received in this Court for filing on January 10, 2020 [DE 1 at 11].[4]
According to Respondent, consistent with the above BOP policies, the official stamp on the outside
of this envelope reflects the date Movant provided the envelope to staff for mailing and the January
10, 2020 filing date is consistent with the 24-hour processing window plus time for the envelope and
its contents to be delivered by mail.

Respondent asserts further that, per BOP policy, when an inmate provides outgoing legal mail,
only the outside envelope is stamped with the official "special/legal mail" stamp, *see* [DE 13-1], and
hand-dated with the date received from the inmate; no other stamps are used.  BOP Program Statement
5265.14, dated April 5, 2011, Section 540.18(d), "Special Mail," available at
https://www.bop.gov/policy/progstat/5265_014.pdf (outgoing special mail shall be stamped "directly
on the back side of the inmate's outgoing special mail" and shall include the official stamp statement,
"the name and address of the institution and space for the date").  The "Notice to Clerk of Court" that
Movant submitted with his traverse to prove the date his § 2255 Motion was mailed is stamped and

---

[4] Respondent asserts that because Movant did not send his § 2255 Motion by certified mail, there is no BOP
mail log record of it.

dated on the face of the Notice, however, not on the back of any envelope.  When asked under oath how he obtained this stamp, Movant had no answers for the Court.

Ultimately, the Court finds that the reliable evidence of record shows that Movant gave his Motion to prison officials for mailing on December 13, 2019.  Based on the undisputed evidence of the BOP's routine practice of delivering all prisoner legal mail to the post office within 24 hours of when the prisoner gives it to mail room staff, along with the other evidence discussed below, the Court finds that Movant did not deliver his Motion for mailing on October 4, 2019, the sole date he contends that he delivered it.

The Court finds Movant's later-filed documentary evidence—including the "Notice to the Clerk of Court," date stamped October 4, 2019, and Mr. Covington's affidavit—untrustworthy and unreliable.  As to the Notice, it was not included as part of Movant's initial § 2255 filing [DE 1].  If Movant had sent it together with his § 2255 Motion as is reflected in the Notice, the Clerk's Office would have filed it along with the Motion.  Instead, Movant first submitted the Notice as an attachment to his traverse many months later, suggesting a thinly veiled attempt to convince the Court that his Motion was timely filed on October 4, 2019.  In addition, BOP policies reflect that prison authorities stamp only the outside envelope for legal mail provided by inmates with an official stamp that includes specific language and the name of the recipient BOP institution.  The stamp located on the face of Movant's proffered Notice is inconsistent with the BOP's undisputed routine mail handling policies and there would have been no reason for the prison authorities to depart from the BOP's established procedures.  Moreover, the stamp on the Notice does not reflect the typed name of the institution, indicating that the stamp is not an authorized and official BOP stamp.  *Compare* DE 1 at 11 (§ 2255 Motion envelope stamped with the official stamp including the name of the institution) *and* DE 8 at 8 (Traverse envelope stamped with the official stamp including the name of the

institution) *with* DE 8 at 11 (the stamp on the proffered Notice which does not include the name of the institution).   Notably, the Court notes that Movant's traverse itself is further proof of the consistency of BOP's established procedures.   The traverse has an official stamp stating that it was delivered to prison authorities on August 28, 2020 and it was filed with the Court eleven days later, on September 8, 2020 [DE 8].   Accordingly, the Court finds that the Notice submitted by Movant is not what it purports to be and does not support Movant's claim.

Similarly, Mr. Covington's after-the-fact affidavit is not credible.   The affidavit is signed on August 26, 2020, which is over ten months after the alleged mailing date of October 4, 2019.   The affidavit states that Mr. Covington was with Movant on October 4, 2019 and saw him give unspecified legal documentation to the mail room officer that day.   At the evidentiary hearing, neither Movant nor Mr. Covington provided reliable information to explain how they would remember the precise date of October 4, 2019.   Movant initially could not recall the date until his memory was refreshed and later testified that "he not really sure what exact date it was."   The Court finds such wavering testimony unreliable.   The Court similarly finds Mr. Covington's testimony unreliable.   Unlike Movant, Mr. Covington did not waver in his testimony.   However, Mr. Covington's version of events simply does not add up.   Apart from the questionable and unreliable Notice, there is no other documentary or other evidence to show that prison authorities received legal mail from either Movant or Mr. Covington on October 4, 2019.   It stretches credibility to believe that Movant and Mr. Covington delivered legal mail to prison authorities on that date but that somehow Movant's Motion did not get officially stamped and delivered until many months later, on December 31, 2019.

In sum, the Court finds from the reliable evidence in the record, including but not limited to the uncontested BOP mailing policies and procedures, that Movant first gave his Motion to prison

11

authorities for mailing on December 13, 2019. That date is after the § 2255 statute of limitations expired, which alone is grounds for denying Movant's first claim.

### 2.     Alternatively, Movant's Ineffective Assistance Claim Fails on the Merits

Even assuming *arguendo* that Movant timely raised his claim of ineffective assistance, this claim is without merit.

A claim of ineffective assistance is evaluated against the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  To show ineffective assistance of counsel, a movant must prove two things: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense."  *Id.* at 687.  Performance is deficient when "it f[alls] below an objective standard of reasonableness and [i]s outside the wide range of professionally competent assistance." *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011).  Under the prejudice prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland, 466 U.S. at 694.*

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court held that *Strickland* applies to determine whether counsel was ineffective for failing to file a notice of appeal.  *Flores-Ortega*, 528 U.S. 470, 477 (11th Cir. 2005).  Regarding the first part of *Strickland*—whether counsel's representation fell below an objective standard of reasonableness—the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se."  *Gomez-Diaz v. U.S.,* 433 F.3d 788, 791–92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477).  In such cases, prejudice is presumed, and the movant is entitled to resentencing and a new appeal with no further showing.  *Flores-Ortega*, 528 at 483 ("The … denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, … demands a presumption of prejudice.").

Even if a client has not made a specific request of his counsel to file an appeal, counsel generally must "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also Thompson v. U.S.*, 504 F.3d 1203, 1206 (11th Cir. 2007). Adequate consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206. If a criminal defense attorney's consultation comports with that definition, the only way an attorney can be deemed ineffective is if the defendant insisted with an "express instruction[]" to appeal. *Flores-Ortega*, 528 U.S. at 478.

At the evidentiary hearing, Movant testified that his mother, his sister, his son's mother, and his girlfriend were present in the courtroom at his sentencing. After the Court pronounced Movant's sentence of 57 months in prison at sentencing, Movant testified that he told his attorney, Mr. Simon, "Can I get back" which Movant said "mean[t] can I put an appeal in." Movant further testified that he met with Mr. Simon in person when he got back to the county jail. Movant said this later meeting occurred with just Movant and Mr. Simon present in the county jail's visiting hall either the same day of sentencing or two days later. Movant explained that he told Mr. Simon he felt he "got over sentenced" because, while he could not recall specifics, he thought he would get 36 months in prison for pleading guilty.

Movant's older sister, Sonia Francois, testified that she monitored the progress of her brother's federal case, spoke with his trial counsel throughout, and submitted an affidavit in this case. Ms. Francois recalled being at her brother's sentencing seated in the second row of the courtroom. Ms.

Francois said she remembered her "brother asking for the appeal" and the "judge was like he has no record in regards to … continue the appeal" but that she didn't "remember a hundred percent, to be honest."  On cross-examination, Ms. Francois indicated that Movant spoke with his trial counsel in the approximately five minutes after sentencing before being taken out of the courtroom though she admitted she did not hear the whole conversation verbatim.  Ms. Francois said she spoke with Mr. Simon after the sentencing but that their conversation did not deal with whether there would be an appeal.

Movant's former girlfriend and mother of his son, Webertha Labossiere, testified that she knew about Movant's federal case, was present at his sentencing in the second or third row, and submitted an affidavit in this case.  Ms. Labossiere initially did not recall what happened at sentencing, but after having her recollection refreshed, she testified that Movant was trying to see if he could get less prison time.  Ms. Labossiere indicated that Movant brought up an appeal to his counsel though she did not recall the specific details.

Movant's trial counsel, Jennito Simon, testified that he represented Movant in the underlying federal criminal case.  During that representation, Mr. Simon says he spoke to Movant about the benefits of going to trial versus taking a plea and that Movant ultimately decided to plead guilty.  Mr. Simon testified that he did not make any representations about the time Movant would get but that, over the course of at least 3 to 5 meetings, Mr. Simon went over the PSI with Movant, told Movant what the sentencing guideline range would be, and strategized about the plan going forward— including asking the sentencing judge for a variance and to depart downward.  Mr. Simon described Movant at being "very active in his case" with a lot of questions prompting the two of them to talk about the case often.  Mr. Simon described the objections he filed to the PSI on Movant's behalf and explained how he was "successful in arguing to minimize the amount of firearms, which would have

14

given [Movant] enhancements" resulting in a lower sentencing guideline range of 57 to 71 months. Mr. Simon confirmed that the sentencing judge denied Movant's motion for a downward departure but sentenced Movant to the bottom end of the lowered guideline range, *i.e.* 57 months.  Mr. Simon testified that he did not have any specific conversations with Movant about filing an appeal, Movant did not instruct him to file an appeal, and Mr. Simon did not believe there were any ripe issues for appeal following Movant's plea and sentence.  Mr. Simon testified further that he did not have any conversations with Movant's family about filing an appeal.

On cross-examination, Mr. Simon testified to being a member of the Florida Bar since 2013 and to having previously worked as a state prosecutor practicing exclusively state law.  Mr. Simon testified that Movant's case was the second or third federal criminal case he had ever handled.  Mr. Simon said he did not remember Movant saying "can I get back" after sentencing.  Mr. Simon also did not recall preserving any objections at the close of sentencing.

Because the witness testimony and evidentiary submissions concerning whether Movant asked his trial counsel to file an appeal contain marked differences, the court must make credibility determinations while also considering the record as a whole.  *See U.S. v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).   Ultimately, the Court credits Mr. Simon's testimony that Movant never asked him to file an appeal and discredits other witness testimony and evidentiary submissions to the contrary.  The Court finds that Mr. Simon gave specific and unequivocal testimony about his general practice and procedures regarding communication with his clients as a criminal trial attorney.  Under the circumstances, it is not plausible that Mr. Simon would have refused to file a notice of appeal had Movant directed him to do so.  Mr. Simon's denial that Movant ever instructed him to file an appeal is bolstered by the record in this case, which reflects Movant's knowing guilty plea and his successful pursuit of a sentencing objection that significantly lowered his overall sentencing guideline range.

These circumstances suggest that an appeal would have been fruitless and there would be no apparent reason for Movant to ask Mr. Simon to file an appeal.

Movant's testimony was not so credible. His comments regarding the way he allegedly instructed Mr. Simon to appeal were confusing and lacking in specificity. Movant's testimony about having said "can I get back" as translating to a direction for Mr. Simon to file an appeal does not make logical sense. Other aspects of Movant's testimony also call his general credibility into question. Movant claimed that, after his sentencing, he personally met with Mr. Simon at the county jail and that the two of them discussed his sentence, but he was unable to recount any specifics about the meeting. Similarly, Movant's sister and his son's mother also were unable to recall specifics and their testimony was conflicting. Movant's sister said she remembered Movant asking for an appeal but Movant's son's mother, who was seated in the same general area as Movant's sister, said she did not recall what exactly what was said. This ambiguous witness testimony stands in stark contrast to the clear statements in these same witnesses' affidavits suggesting that they both heard Movant "directly instruct his attorney … to file an appeal" and that Mr. Simon told them both that he had filed an appeal. The Court therefore finds the testimony or submissions suggesting that Movant instructed Mr. Simon to file an appeal not credible.

Having found that Movant did not ask Mr. Simon to file an appeal, in the interest of completeness, the Court will also discuss whether Mr. Simon should have consulted with Movant about an appeal. *See Otero v. U.S.*, 499 F.3d 1267, 1270 (11th Cir. 2007) ("We have been told by the Supreme Court that in cases like this— 'cases where the defendant [does not] instruct[ ] counsel to file an appeal'—'the question whether counsel performed deficiently by not filing a notice of appeal is best answered by...asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.' ") (quoting *Flores–Ortega*, 528 U.S. at 478). A criminal defense

lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal. *See id.*

Rather than endorse an inflexible rule, the Supreme Court in *Flores–Ortega* held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores–Ortega*, 528 U.S. at 480. This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly...waived some or all appeal rights*." Id.* Notably, guilty pleas tend to indicate that the defendant is "interested in seek[ing] an end to the judicial proceedings." *Otero*, 499 F.3d at 1270 (quoting *Flores-Ortega*, 528 U.S. at 480).

Here, Movant pled guilty pursuant to a plea agreement which indicates his interest in ending the judicial proceedings. Moreover, Movant received a sentence that was within the successfully lowered range of what his counsel would have advised him was possible. Therefore, there was no reason for Mr. Simons to believe that Movant would want to appeal.

For all of the above reasons, Movant is not entitled to relief on his ineffective assistance of counsel claim premised on the allegation that Mr. Simons performed deficiently in failing to appeal.

### B.     *Claim Two—Rehaif v. U.S.*

Next, Movant argues that his conviction violates *Rehaif v. U.S.*, 139 S. Ct. 2191 (2019). The U.S. Supreme Court decided *Rehaif* on June 21, 2019, seven months and twenty days after Movant's conviction and sentence became final on November 1, 2018.

1.      **Movant's *Rehaif* Claim is Untimely**

As an initial matter, this second claim is untimely.  It is evident from the Motion and the record that only two provisions apply with regard to timeliness:  28 U.S.C. § 2255(f)(1) (§ 2255 Motions shall be filed within one year of "the date on which the judgment of conviction becomes final") and 28 U.S.C. § 2255(f)(3) (§ 2255 Motions shall be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").  Movant's Motion is not timely under either provision.

First, under 28 U.S.C. § 2255(f)(1), Movant did not timely file his Motion within one year of his judgment of conviction becoming final.  As discussed above, the parties all agree that Movant's conviction became final on November 1, 2018 (14 days after his final judgment of conviction on October 18, 2018).  By the time Movant filed his Motion on December 31, 2019 (the date he delivered his Motion to prison authorities, which is the effective filing date under the prison mailbox rule), over one year had passed.  As such, Movant did not timely file this second claim under 28 U.S.C. § 2255(f)(1).

Second, while Respondent contends that Movant's second claim is timely under 28 U.S.C. § 2255(f)(3), Eleventh Circuit authority holds otherwise.  Specifically, the Eleventh Circuit has concluded that the Supreme Court did not make *Rehaif* retroactive to cases on collateral review. *In re: Price*, 964 F. 3d 1045, 1048 (11th Cir. 2020) (holding that "*Rehaif* did not announce a new rule of constitutional law and, even if it did, it has not been made retroactive to cases on collateral review by the Supreme Court") (citing *In re: Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019)); *In re: Wright*, 942 F.3d 1063, 1065 (11th Cir. 2019) (holding that "*Rehaif v United States* did not announce a new rule of constitutional law but rather clarified the requirements of 18 U.S.C. §§ 922(g) and 924(a)(2).

Further, the Supreme Court did not make *Rehaif* retroactive to cases on collateral review."); *Young v. U.S.*, 2020 WL 4334037, at *1 (11th Cir. Apr. 29, 2020) (affirming district court's determination that an initial 2255 motion was untimely because, among other reasons, "*Rehaif* does not constitute a new right made retroactively applicable"). Thus, under this applicable Eleventh Circuit authority, Movant's *Rehaif* claim is not timely under 28 U.S.C. § 2255(f)(3).

### 2. Alternatively, Movant's *Rehaif* Claim Fails on the Merits

Alternatively, even if *Rehaif* were found to be a newly recognized right retroactively applicable to cases on collateral review, this claim fails on the merits.

In *Rehaif*, the Supreme Court held that to convict a defendant for unlawful possession of a firearm, the government must prove not only "that the defendant knew he possessed a firearm," but also that he knew he belonged to one of the nine categories of persons that § 922(g)[5] prohibits from possessing a firearm. *Id.* at 2194, 2200. In doing so, the Supreme Court overturned the law of the Eleventh Circuit (and several others), which had held that the government did not have to prove the defendant knew of his prohibited status. *See, e.g., U.S. v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997). The Supreme Court reasoned that since § 924(a)(2) provides that anyone who "knowingly violates" § 922(g) will be fined or imprisoned for up to 10 years, the word "knowingly" applies to the status element, not merely the possession element. *Rehaif*, 139 S. Ct. at 2194, 2195–96. The Supreme Court also reasoned that a basic principle of criminal law is that a scienter requirement applies to each element that goes to the wrongfulness of an offense (except for minor regulatory offenses). *Id.* at 2196–97. And for § 922(g), the status element goes to the heart of what makes the act of possessing

---

[5] Section 922(g)(1) makes it "unlawful for any person...who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year...to...possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Section 924(a)(2) provides that "[w]hoever knowingly violates subsection … (g) … of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).

a firearm a crime, because merely possessing a gun is otherwise lawful.  *Id.* at 2197.  As a result of *Rehaif*, to secure a conviction under § 924(a)(2) the Government must prove the defendant knowingly possessed the firearm *and* knew he or she was in a class of persons barred from possessing a firearm. *Id.* at 2195-96.

The Supreme Court decided *Rehaif* after Movant was sentenced and after the time for Movant to file a direct appeal had expired.  Relying on *Rehaif*, Movant claims that "[t]he Government [] failed to prove that [Movant] knew that he belonged to the relevant category of persons barred from possessing a firearm" and that neither the indictment or the plea colloquy included "the required 'mens rea.'" [DE 1 at 5].  Respondent counters that Movant is not entitled to relief because this second claim is procedurally barred [DE 7 at 5-10].  The undersigned agrees.

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."  *Lynn v. U.S.*, 365 F.3d 1225, 1234 (11th Cir. 2004).  Therefore, Movant's *Rehaif* claim is procedurally barred unless he can demonstrate either (1) cause for not raising the ground on direct appeal and prejudice resulting from the omission, or, (2) alternatively, that he is actually innocent.  *Bousley v. U.S.*, 523 U.S. 614, 622 (1998) (internal quotations omitted); *McKay v. U.S.*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Lynn*, 365 F.3d at 1232; *McCoy v. U.S.*, 266 F. 3d 1245, 1258 (11th Cir. 2001); *U.S. v. Nyhuis*, 211 F. 3d 1340, 1344 (11th Cir. 2000).

To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  *Lynn*, 365 F.3d at 1235 and n. 20 (citations omitted).  To establish prejudice, Movant "must show that there is at least a

reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 535 F.3d 880, 892 (11th Cir. 2003). Here, Movant cannot demonstrate either.

Although failure to raise a "claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default," the argument ultimately successful in *Rehaif* was not a novel legal theory. *McCoy*, 266 F. 3d at 1258 (citations and internal quotations omitted). While *Rehaif* had not been decided at the time Movant was sentenced, this does not mean that Movant could not have raised the arguments at issue in *Rehaif* in a direct appeal. In other words, the fact that *Rehaif* was not decided until 2019 does not establish "cause" for Movant's failure to raise the argument that the Government was required to establish he knew of his status as a prohibited person at the time he possessed the firearm in this case.

By the time Movant pled guilty to the felon in possession charge on August 8, 2018, "the Federal Reporters were replete with cases" challenging whether the Government had to satisfy a *mens rea* requirement as to the status element of 18 U.S.C. § 922(g) and holding that it did not. *See Bousley*, 523 U.S. at 622; *U.S. v. Rehaif*, 888 F. 3d 1138, 1144-45 & n. 3 (11th Cir. Mar. 26, 2018) (citing cases), reversed by *Rehaif v. U.S.*, 139 S. Ct. 2191 (2019). Indeed, the position the Supreme Court took in *Rehaif* had already been recognized in four federal circuits even before defendant Rehaif adopted the position. *See U.S. v. Games-Perez*, 695 F. 3d 1104, 1124 (10th Cir. 2012); *U.S. v. Reyes*, 194 F. App'x 69, 70 (2d Cir. 2006); *U.S. v. Gardner*, 488 F. 3d 700, 715 n. 2 (6th Cir. 2007); *U.S. v. Langley*, 62 F. 3d 602 (4th Cir. 1995).

The fact that no court had yet adopted what *Rehaif* ultimately held or that Movant might not have been successful if he had raised the claim on appeal is not dispositive. The question is whether Movant had the means to assert the claim, not the means to prevail on it—perceived futility does not constitute cause to excuse a procedural default. *Bousley*, 523 U.S. at 622-23; *McCoy*, 266 F. 3d at

1258-59; *see also McCarthan v. Director of Goodwill Industries-Suncoast, Inc.*, 851 F. 3d 1076, 1087 (11th Cir. 2017).

Movant has also not shown prejudice or actual innocence. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623, *McKay*, 657 F. 3d at 1197. It is the defendant's burden, and the government has wide latitude to present any admissible evidence to rebut a defendant's claim of actual innocence. *Bousley*, 523 U.S. at 634-24; *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).

Here, the Presentence Investigation Report ("PSI"), the Plea Agreement, and the Factual Proffer for Change of Plea rebut Movant's claims of actual innocence and prejudice. First, the PSI reflects Movant had a prior conviction of delivering cocaine in Broward County, after which he received a sentence of 18 months in prison [CR DE 29, PSI ¶ 36]. According to the PSI, after being convicted of selling crack cocaine to an undercover deputy, Movant was sentenced to a term of probation which was later revoked based upon Movant violating his probation for which Movant was sentenced to "18 months imprisonment" on June 2, 2016 [*Id.*]. Movant did not object to this prior conviction and felony sentence.

Second, in the signed Plea Agreement [CR DE 24], Movant specifically agreed to plead guilty to the Indictment, "which charges the defendant with knowingly possessing a firearm in and affecting interstate and foreign commerce after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Section 924 (g)(1)." In the accompanying Factual Proffer for Change of Plea [CR DE 25], which Movant also signed, Movant admitted that if the case had gone to trial "the Government's evidence would establish beyond a reasonable doubt" certain specified facts underlying the felon in possession charge, including that Movant was observed holding firearms on September 27, 2017, including a stolen rifle

that had moved in interstate commerce.  Importantly, it was expressly noted in the proffer that Movant "FRANCOIS has a 2016 felony conviction for delivery of cocaine." [*Id.* at 2].  Thus, "had the government been required to prove that [Movant] knew he was a felon at the time he possessed a firearm, there is overwhelming evidence to show that it would have easily done so." *U.S. v. Bates*, 960 F.3d 1278, 1296 (11th Cir. 2020).  Because Movant cannot show he is actually innocent or that the result of these proceedings would have been different had the government been required to prove Movant knew he was a convicted felon, Movant is not entitled to relief under *Rehaif*.  *See Dawkins v. U.S.*, 2020 WL 8270518, at *2 (11th Cir. 2020) (affirming district court's determination that *Rehaif* clam was procedurally barred because "Dawkins cannot demonstrate actual innocence, as he admitted that he possessed a firearm that affected interstate commerce after having been twice convicted of a felony"); *U.S. v. Reed*, 941 F. 3d. 1018 1022 (11th Cir. 2019) (where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a *Rehaif* error does not affect his substantial rights).

The Court rejects Movant's argument that the Indictment failed to give notice of the charged offense because it did not allege that he knew he was a felon.  The Eleventh Circuit has held, on similar facts, that such an error did not affect the defendant's substantial rights under plain error review.  *See, e.g., U.S. v. Innocent*, 977 F.3d 1077, 1082–84 (11th Cir. 2020).  Here, Movant plainly cannot "prov[e] a reasonable probability that he would have obtained a different result but for" the Indictment's failure to allege that he knew he was a felon "because circumstantial evidence establishes that [he] knew of his felon status." *Id.* at 1082 (internal citation omitted).

Finally, to the extent Movant contends that his counsel was ineffective for failing to require the Government to establish as a separate element of the felon in possession offense that Movant knew he was a convicted felon or for failing to raise this issue on direct appeal, such claims also lack

23

merit.  To establish ineffective assistance, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  S*trickland v. Washington,* 466 U.S. 668, 687 (1984).  As set forth above, Movant cannot show prejudice.  He also cannot establish that counsel's performance was deficient.

When Movant was charged and pled, the law was understood to allow the conviction of a defendant for a § 922(g) offense based solely on his knowledge that he possessed a firearm. *Dawkins*, 2020 WL 8270518, *1 (citing *Innocent*, 977 F.3d at 1082).  "Although *Rehaif* later clarified that a defendant must have knowledge of both his possession of the firearm and his felon status, [Movant]'s counsel was not required to object to the indictment or the district court's provision of the elements based on predictions of how the law may develop."  *Dawkins*, 2020 WL 8270518, at *1 (citing *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).   Trial counsel is not constitutionally ineffective for failing to anticipate a change in the law.  *See Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1334 (11th Cir. 2016); *U.S. v. Ardley*, 273 F.3d 991, 993) (11th Cir. 2001) (Carnes, J., concurring) (there is a "wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel.") (collecting cases).

In addition to being untimely, Movant's *Rehaif* claim plainly fails on the merits.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2255 Cases.

Where a district court has rejected a movant's constitutional claims on the merits, Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel, 529 U.S. 473, 484 (2000)*. However, when the district court has rejected a claim on procedural grounds, Movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack*, 529 U.S. at 483-84 (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the District Court deny a COA in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in the objections permitted to this report and recommendation.

## **RECOMMENDATION**

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 1] be **DENIED** and that no certificate of appealability be issued.

## **NOTICE OF RIGHT TO OBJECT**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge James I. Cohn. Failure to timely file objections shall bar the parties from a *de novo* determination by

the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 12th of October, 2021.

_____
SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE
